FILED
2013 Oct-21  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROSIE HUMPHREY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:12-CV-1786-RDP** |
| | } | |
| **WAL MART STORES EAST, LP,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendant's Motion for Summary Judgment (Doc. # 18).

Plaintiff has responded (Doc. # 24), and the Motion is ripe for decision.

## I.      Facts[1]

On Thursday, July 14, 2011, Plaintiff, who had suffered from knee problems for a long time,[2]

went alone to the Irondale Wal-Mart store located in the Eastwood Mall area.  (Doc. # 18-1, p. 112).

It was a clear, sunny day, and Plaintiff was wearing capri pants and rubber-soled flip-flop shoes.

(Doc. # 18-1, pp. 114, 116, 124).  Plaintiff wore her eyeglasses which allowed her to see well enough

to safely navigate the store.  (Doc. # 18-1, pp. 116-18).  From the time Plaintiff entered the store to

the time she walked to the outdoor patio, she never looked at the floor. (Doc. # 18-1, pp. 130-31).

---

[1] Although the court's Summary Judgment Requirements (Appendix II to the Scheduling Order, Doc. # 13 at p. 5) specify that the first section of the brief of the party opposing a summary judgment motion "must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts," Plaintiff's brief contains no section addressing the facts designated by Defendant as undisputed.  (*See* Doc. # 24).

[2] Plaintiff  has suffered from knee problems since about 1985.  She underwent bilateral knee replacement in 1985 or 1986.  Ex. 1, pp. 8, 46, 47.  In approximately 2001 or 2002, Plaintiff underwent a second knee replacement on her left knee. Ex. 1, pp. 66-67. Also, approximately five months before the incident made the basis of this lawsuit, Plaintiff underwent neck surgery to treat deterioration and degeneration of C3-C4 of her cervical spine. Ex. 1, pp. 76, 82.

Although Plaintiff occasionally used an electric cart when navigating the Wal-Mart store, on this occasion she used a push shopping cart. (Doc. # 18-1, pp. 102, 119-21, 123). Just before the incident at issue, Plaintiff entered the Garden Center near the cash register to look at pots. (Doc. # 18-1, pp. 133-34). As Plaintiff walked toward the pots, she did not look at the floor. (Doc. # 18-1, pp. 137, 139). After taking two to three steps, or walking about six feet, toward the pots inside the Garden Center, Plaintiff's feet began to slide. (Doc. # 18-1, pp. 136-37, 163). While still holding onto her shopping cart, Plaintiff slid to the ground with her right foot moving forward and her left foot sliding backward. (Doc. # 18-1, p. 140). Plaintiff landed in a sitting position on the floor with the shopping cart on top of her. (Doc. # 18-1, pp. 140, 143). Plaintiff testified that while sitting on the floor, she noticed her bottom and legs were wet. (Doc. # 18-1, p. 145).

It was only after she fell that Plaintiff noticed water on the floor. She believes that water came from a blue and white cooler that was about three feet away. (Doc. # 18-1, pp. 145-46, 164-65, 170-71, Ex 3 thereto). Plaintiff described the water as messy, tracked, and covering a 38-inch by 10-inch surface area. (Doc. # 18-1, pp. 166, 168, 180). Plaintiff testified that she saw no shopping cart marks in the liquid, but she saw some footprints in it. (Doc. # 18-1, p. 221). Once Plaintiff looked at the floor after the incident, she did not have any difficulty seeing the water. (Doc. # 18-1, p. 174). Plaintiff admits that she had an unobstructed view and if she had chosen to look down at the floor as she was walking, she could have seen the water from a distance of 10 or 15 feet away. (Doc. # 18-1, pp. 177, 183-84). If Plaintiff had seen the water, she would not have stepped in it because she would have recognized it as a slip hazard. (Doc. # 18-1, p. 178).

Plaintiff does not know where the water came from or how long it may have been on the floor. (Doc. # 18-1, pp. 189-90). Nor can she say that the water had been reported to Wal-Mart prior

2

to her fall. (Doc. # 18-1, p. 190). However, Plaintiff testified at her deposition that she saw water drip from a bottle of water pulled from the cooler for her after the accident, and from at least one other bottle pulled from the cooler. (Doc. # 18-1, pp. 188, 233-35). The cooler was about three feet away from where Plaintiff fell. (Doc. # 18-1, pp. 164, 170-71, Ex. 3 thereto)

Employees Amanda Grant, Darion Bell, LaKimbrea Reyes, and Rose Martinez Allen, who all came to the scene after Plaintiff's fall, did not see any water underneath Plaintiff or on the floor near her. (Doc. # 18-2, pp. 43, 45, 50; Doc. # 18-3, pp. 24-25, 30; Doc. # 18-4 at 23, 44; Doc. # 18-5, p. 46, 64-66). While at the scene, Ms. Allen looked around the floor, but she did not see any water in the area of the incident. (Doc. # 18-5, pp. 46, 66). According to Ms. Allen, Wal-Mart associates are continuously monitoring the sales floor in order to keep it safe for customers. (Doc. # 18-5, p. 48). Although it had rained the previous day, Ms. Allen testified that if there had been rain from the night before, the water would not have been an issue at the time of Plaintiff's incident during the afternoon of the following day. (Doc. # 18-5, p. 49). Any accumulation of rain water in the Garden Center would have been cleaned up immediately. (Doc. # 18-5, p. 49).

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party

3

has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

## III.    Analysis

Plaintiff's Complaint asserts a "negligence/wantonness" claim against Defendant.  (Doc. # 1).  The court addresses both components of that claim below.

### A.        Plaintiff's Negligence Claim

One seeking to recover on a negligence claim must prove a breach of a duty owed and must prove that the breach proximately caused injury or damage*. Lowe's Home Ctrs., Inc. v. Laxson*, 655 So.2d 943, 945-46 (Ala. 1994). The duty a premises owner owes to an invitee is well established. "The duty owed to an invitee by [a business] is the exercise of ordinary and reasonable care to keep the premises in a reasonably safe condition."' *Cook v. Wal-Mart Stores, Inc.*, 795 F.Supp.2d 1269, 1273 (M.D. Ala. 2011) (quoting *Lilya v. Greater Gulf State Fair, Inc.*, 855 So.2d 1049, 1054 (Ala. 2003)) (internal quotations marks, brackets and citations omitted).  As the Alabama Supreme Court has reiterated, "[t]he storekeeper is not an insurer of the customers' safety but is liable for injury only

in the event he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition." *Cook*, 795 F.Supp.2d at 1273 (quoting *Dolgencorp, Inc. v. Hall*, 890 So.2d 98, 101 (Ala. 2003) (in turn quoting *Cash v. Winn–Dixie of Montgomery, Inc.*, 418 So.2d 874, 876 (Ala. 1982)) (internal quotations omitted). "For negligence to attach, the business must have had or should have had notice of the defect before the time of the accident." *Cook*, 795 F.Supp.2d at 1273 (quoting *Hale v. Sequoyah Caverns & Campgrounds, Inc.*, 612 So.2d 1162, 1164 (Ala. 1992) (internal quotations and citation omitted). The "entire basis of a [business's] liability rests upon [its] superior knowledge of the danger which causes the [customer's] injuries." *Cook*, 795 F.Supp.2d at 1273 (quoting *Fowler v. CEC Entm't*, 921 So.2d 428, 432-33 (Ala.Civ.App. 2005) (in turn quoting *Denmark v. Mercantile Stores Co.*, 844 So.2d 1189, 1194 (Ala. 2002)) (internal quotations omitted).

"If the business (or one of its employees) creates the dangerous condition, then the business is deemed to have actual notice of it." *Cook*, 795 F.Supp.2d at 1273 (quoting *Nelson v. Delchamps, Inc.*, 699 So.2d 1259, 1261 (Ala.Civ.App. 1997) (internal quotations omitted). But where "there is no evidence that the business has created the dangerous condition, notice can be proved by showing (1) that the substance slipped upon had been on the [floor] a sufficient length of time to impute constructive notice ...; or (2) that [the business] had actual notice that the substance was on the [floor]; or (3) that [the business] was delinquent in not discovering and removing the substance." *Cook*, 795 F.Supp.2d at 1273 (quoting *Dunklin v. Winn-Dixie of Montgomery, Inc.*, 595 So.2d 463, 464 (Ala.1992) (quoting *Maddox v. K-Mart Corp.*, 565 So.2d 14, 16 (Ala. 1990)) (internal quotations omitted). "[I]f the plaintiff cannot prove notice in any of these ways, then that superior knowledge [of the business] is lacking, ... [and] the [business] cannot be held liable." *Cook*, 795 F.Supp.2d at 1273 (quoting *Fowler v. CEC Entm't*, 921 So.2d 428, 432-33 (Ala.Civ.App. 2005) (in

turn quoting *Denmark v. Mercantile Stores Co.*, 844 So.2d 1189, 1194 (Ala. 2002)) (internal quotations omitted).

Plaintiff argues that Defendant's employees were responsible for the water on the floor. (Doc. # 24 at 6).  Thus, she argues, Defendant was on constructive notice of the water on the floor and Defendant is responsible for her fall because it negligently failed to clean up the water.  *Cook*, 795 F.Supp.2d at 1273; *Nelson*, 699 So.2d at 1261.  Defendant argues that there is insufficient evidence that it had notice of any substance on the floor and that, even if there was, it was an open and obvious hazard for which it is not liable.  (Doc. # 19 at 16, 21).

### 1.   Notice

Although there is a dispute about whether there was even water on the floor, for summary judgment purposes, and viewing the evidence in the light most favorable to the non-movant, the court must analyze Defendant's Rule 56 motion as if there was.  Furthermore, Plaintiff presented deposition testimony not only as to the presence of the water, but also that it came from dripping water bottles being taken from the nearby cooler.  There is evidence from which a jury could conclude not only that there was water on the floor, but also that Defendant's employees were responsible for it.  Based on this evidence, a reasonable factfinder could determine Defendant was on constructive notice of the water on the floor where Plaintiff slipped.  Therefore, summary judgment is inappropriate on the basis that Defendant did not have notice of the water at issue.

### 2.   Open and Obvious

Under Alabama law, if liquid on a floor is an open and obvious danger that reasonably should have been observed by a plaintiff, it follows that a defendant's common-law duty to warn of or eliminate that hazard is negated as a matter of law.  *Arnold v. Wal-Mart Stores, Inc.*, 2009 WL

4827389 *4 (M.D. Ala. 2009); *Jones Food Co., Inc. v. Shipman*, 981 So.2d 355, 362 (Ala. 2006).

Defendant argues that Plaintiff's deposition testimony demonstrates that: (1) the spill of water was

large, measuring approximately 38 inches by 10 inches; (2) although she never looked down at the

floor prior to her accident, if she had she could have seen the spill from at least 10 to 15 feet away;

and (3) if she had looked down and seen water, she would have walked around it as she would have

recognized it as a slip hazard, indicate that the hazard was open and obvious and should have been

observed by Plaintiff.

    "The test for determining whether a hazard is open and obvious is an objective one."

*Arnold*, 2009 WL 4827389 at *5 (quoting *Dolgencorp, Inc. v. Taylor*, 2009 WL 1643347, *4 (Ala.

2009) (internal quotations and citations omitted). But the open and obvious question "is an

affirmative defense, for which [Defendant] bears the ultimate burden of proof." *Arnold*, 2009 WL

4827389 at *5 (quoting *Dolgencorp, Inc. v. Taylor*, 2009 WL 1643347 at *4) (internal quotations

omitted). "[Q]uestions of contributory negligence, assumption of the risk, and whether the plaintiff

should have been aware of the defect, are normally questions for the jury." *Williams v. Bruno's Inc.*,

632 So.2d 19, 22 (Ala. 1993) (quoting *Bogue v. R & M Grocery*, 553 So.2d 545, 547 (Ala. 1989)

(internal quotations omitted).  The issue of whether Plaintiff should have been aware of the water

on the floor in this case necessarily involves credibility determinations and is a question for a jury

to determine.[3]

---

[3] Certainly Plaintiff's history of knee problems and regular use of an electric shopping cart, combined with her failure to look at the floor on which she was walking, in flip flops, is relevant to the issue of contributory negligence and whether Plaintiff should have taken more care to be aware of her environment.  However, again, these are issues for a jury to evaluate.

### B.    Plaintiff's Wantonness Claim

In Alabama, "wantonness" is defined "as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Alfa Mut. Ins. Co. v. Roush*, 723 So.2d 1250, 1256 (Ala. 1998) (citing *Bozeman v. Central Bank of the South*, 646 So.2d 601 (Ala.1994)). As discussed above, there is a question of fact as to whether Defendant's employees were responsible for the water on the floor and, therefore *should have known* about it.   However, there is no evidence that they did know about a hazard and disregarded that knowledge.   "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." *Ex parte Essary*, 992 So.2d 5, 9 (Ala. 2007) (quoting *Tolbert v. Tolbert*, 903 So.2d 103, 114 (Ala. 2004)).  All of Defendant's employees at the scene of Plaintiff's fall have denied seeing any water.  Although that is obviously a disputed fact related to Plaintiff's negligence claim, nothing in the facts (or even the pleadings) points to a level of a conscious disregard of a known danger.  There is simply no Rule 56 evidence before the court upon which a reasonable trier of fact could conclude that Defendant (or its employees) acted with wanton intent. Therefore, summary judgment is appropriate on the issue of wantonness.

## IV.   Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is due to be granted in part and denied in part.  A separate order will be entered.

**DONE** and **ORDERED** this _____21st_____ day of October, 2013.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

8